**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THOMAS D. SCOTT,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 17-00429-B |
| | * | |
| **NANCY BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Thomas D. Scott (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Titles II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 19, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. **Procedural History**[1]

Plaintiff filed his application for benefits on January 22, 2016, alleging disability beginning May 1, 2014, based on major depression, borderline personality disorder, asthma, sleep apnea, degenerative disc of the spine, left knee, right ankle, hearing loss, and tinnitus. (Doc. 8 at 172, 196, 205). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on November 14, 2016. (Id. at 39). Plaintiff attended the hearing with his attorney and provided testimony related to his claims. (Id. at 42). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 68). On April 24, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 19). The Appeals Council denied Plaintiff's request for review on August 15, 2017. (Id. at 5). Therefore, the ALJ's decision dated April 24, 2017, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on November 8, 2018. (Doc. 20). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

**II. Issues on Appeal**

1. Whether the ALJ reversibly erred in failing to find that Plaintiff's impairments met or equaled Listing 12.04 and/or 12.08?

2. Whether the ALJ reversibly erred in failing to accord adequate weight to the opinion of Plaintiff's treating psychiatrist, Dr. John Cranton?

**III. Factual Background**

Plaintiff was born on November 17, 1970, and was forty-five years of age at the time of his administrative hearing on November 14, 2016. (Doc. 8 at 39, 205). Plaintiff graduated from high school and received training in technical school in drafting, computer aided drafting, and design. (Id. at 44).

Plaintiff last worked from approximately 2000 to 2016 as a recruiter for the military. (Id. at 46, 69, 220). Prior to that, he worked as an electrician. (Id. at 59).

Plaintiff testified that he can no longer work because of grief over his mother's death and because of problems with anger and depression. (Id. at 59-62). He takes Adderall to help him focus. (Id. at 51-52).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

    **A. Substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listings 12.04 or 12.08.**

In his brief, Plaintiff argues that the ALJ erred in finding that his impairments do not meet Listings 12.04 and/or 12.08 given that his treatment records and opinions from his treating physicians satisfy the criteria for these Listings. (Doc. 9 at 7). The Government counters that the ALJ considered all of Plaintiff's impairments and found that they did not meet these or any other Listings and that the ALJ's finding is supported by substantial evidence. (Doc. 13 at 6). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

6

When a claimant, such as Plaintiff in the instant case, contends that he has an impairment meeting the listed impairments, he must "present specific medical findings that meet the various tests listed under the description of the applicable impairment." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). A diagnosis of a listed impairment is not sufficient. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). The record must contain corroborative medical evidence supported by clinical and laboratory findings. Id.; accord Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

To meet Listing 12.04 (describing "depressive, bipolar, and related disorders"), a claimant must establish the criteria of paragraphs "A and B, or A and C,"[3] as follows:

> A. Medical documentation of the requirements of paragraph 1 or 2:
>
> 1. Depressive disorder, characterized by five or more of the following:
>
> a. Depressed mood;

---

[3] Plaintiff does not argue that he meets the paragraph C criteria of this Listing. Therefore, the Court will not address that provision.

7

b. Diminished interest in almost all activities;

c. Appetite disturbance with change in weight;

d. Sleep disturbance;

e. Observable psychomotor agitation or retardation;

f. Decreased energy;

g. Feelings of guilt or worthlessness;

h. Difficulty concentrating or thinking; or

i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following:

a. Pressured speech;

b. Flight of ideas;

c. Inflated self-esteem;

d. Decreased need for sleep;

e. Distractibility;

f. Involvement in activities that have a high probability of painful consequences that are not recognized; or

g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

8

3. Concentrate, persist, or maintain pace (see 12.00E3).

   4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04.

To meet Listing 12.08 ("personality and impulse-control disorders"), a claimant must establish the criteria of paragraphs "A and B," as follows:

   A. Medical documentation of a pervasive pattern of one or more of the following:

   1. Distrust and suspiciousness of others;

   2. Detachment from social relationships;

   3. Disregard for and violation of the rights of others;

   4. Instability of interpersonal relationships;

   5. Excessive emotionality and attention seeking;

   6. Feelings of inadequacy;

   7. Excessive need to be taken care of;

   8. Preoccupation with perfectionism and orderliness; or

   9. Recurrent, impulsive, aggressive behavioral outbursts.

   AND

   B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

   1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

   3. Concentrate, persist, or maintain pace (see 12.00E3).

   4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08. The paragraph B criteria for Listings 12.04 and 12.08 is the same. Thus, if Plaintiff does not meet the paragraph B criteria for Listing 12.04, he likewise cannot meet it for Listing 12.08.[4]

In the instant case, the ALJ found that Plaintiff had the severe impairments of an affective disorder, an anxiety-related disorder, a personality disorder, an attention deficit hyperactivity disorder, a learning disorder, and degenerative disc disease of the lumbar spine. (Doc. 8 at 21). However, the ALJ also found that Plaintiff's impairments, whether considered individually or in combination, did not meet, medically equal, or functionally equal Listings 12.04, 12.08, nor any other listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[5] (Id. at 22-

---

[4] Regulatory changes to the paragraph B criteria went into effect on January 17, 2017. See generally Learson v. Berryhill, 2018 U.S. Dist. LEXIS 168822, *3 n.2, 2018 WL 4717973, *2 n.2 (M.D.N.C. Oct. 1, 2018).

[5] While not at issue here, the ALJ also found that Plaintiff has the RFC to perform a reduced range of medium work with the following restrictions: Plaintiff can frequently climb, kneel, and crouch. He is precluded from exposure to unprotected heights and dangerous machinery. He can perform simple routine tasks in two-hour increments, with normal breaks, for the duration of an eight-hour workday. He can tolerate occasional changes in the routine work setting. He can tolerate occasional interaction with the public, coworkers, and supervisors. He can work in close proximity to

23).

Plaintiff does not challenge the ALJ's findings related to his physical impairments. Rather, Plaintiff argues that his mental impairments meet the criteria for Listings 12.04 and/or 12.08; thus, he is disabled. The undersigned finds, based upon a thorough review of the record, that substantial evidence supports the ALJ's finding that Plaintiff's impairments, whether alone or in combination, do not meet or medically equal Listings 12.04 or 12.08.

First, as the ALJ found, the record evidence shows that Plaintiff has been diagnosed with affective disorder, anxiety-related disorder, personality disorder, attention deficit hyperactivity disorder, and a learning disorder. (Id. at 263, 305, 494, 501, 530). However, with respect to the paragraph B criteria discussed above, the ALJ found that Plaintiff has only *moderate* limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Doc. 8 at 23-24).

As the ALJ discussed, the record evidence shows that Plaintiff has problems with anger; he prefers to be alone; and he has lost interest in many of his previous activities such as surfing, running, kayaking, and working out. (Doc. 8 at 62, 65, 232-33, 612, 747). However, despite these problems, the substantial record

---

others but must work independently and not as part of a team. (Doc. 8 at 25).

11

evidence shows that he is still able to perform his own personal care, do household chores, take real estate classes, take leadership classes at church, drive, shop, pay bills and handle his own finances. (Doc. 8 at 44, 229-32, 524, 612). In addition, he has no problem getting along with authority figures and has never been fired from a job because of problems getting along with people. (Id. at 234). He is also actively involved in his church. (Id. at 519, 524, 612).

In addition, Plaintiff's records from his treating psychiatrist, Dr. John R. Cranton, M.D., reflect treatment from 2012 to March 2017 for ADHD and from 2014 to March 2017 for depression. (Id. at 492-754). During this time, Dr. Cranton regularly noted that Plaintiff was worried and depressed about retiring from the military and was suffering from grief over deaths of family members and his failed marriages. (Id. at 502-06). However, Dr. Cranton also regularly noted largely normal mental examination findings including alert, attentive, cooperative, coherent speech, normal memory, adequate eye contact, "does not appear to be morbidly depressed," no delusions, average intellectual functioning, "appearing less depressed," depression "much improved and not requiring medication," no signs of adverse medication effect, "doing relatively well," stable, "doing a better job of standing up for himself," no decline in his condition, not depressed, not overly anxious, eating and sleeping adequately, and

12

"continues to benefit from therapy" and his medicines. (Id. at 494, 500-25, 749-53). Dr. Cranton also noted that Plaintiff was only taking his medication (Adderall) on an as needed basis and that the medication helped when taken. (Id. at 508-11, 750).

Likewise, consultative psychologist, Dr. John W. Davis, Ph.D., noted on May 28, 2014, that Plaintiff reported troubled interpersonal relationships (although he did visit with friends), as well as depressed and anxious mood and feelings of detachment. However, Dr. Davis also noted largely normal mental examination findings including normal communication and rate of speech, full range of emotional qualities, oriented to person, place, and time, normal concentration and attention, normal memory, normal thought processes, and fair judgment and insight. (Id. at 259-62). Dr. Davis noted that Plaintiff appeared friendly and comfortable during the evaluation. (Id. at 262). Dr. Davis diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Mild, and Unspecified Personality Disorder. (Id. at 263).

Similarly, on April 16, 2016, consultative psychiatrist, Dr. Christina Talerico, M.D., noted Plaintiff's reports of depressed mood with frequent thoughts of harming himself or others, but recorded largely normal examination findings, including normal appearance and behavior, normal and coherent speech, appropriate mood and affect, oriented to person, place, time, and situation, intact memory, normal fund of information, good insight and

judgment, fair impulse control, and normal thought processes with no delusions, although Plaintiff's attention and concentration appeared impaired. (Id. at 529-30). Dr. Talerico diagnosed Major Depressive Disorder, recurrent, moderate, with mood congruent psychotic features; ADHD; and specific learning disorder. (Id. at 530). Dr. Talerico opined that Plaintiff would have little difficulty managing financial benefits, that he was able to function independently, and that he appeared reliable and cooperative during the evaluation. (Id. at 530-31).

The undersigned has also reviewed Plaintiff's evidence that his VA psychologist, Dr. Wade Keckler, evaluated him in November 2014 for fitness for military duty and recommended retirement after diagnosing Plaintiff with Major Depressive Disorder, Severe, Recurrent, and Borderline Personality Disorder. (Doc. 8 at 271). Dr. Keckler noted a previous suicide attempt in 2012 and reports of severe depression and anxiety, with periods of improvement and symptoms occurring "on and off." (Id.). Dr. Keckler's examination findings included sad mood and affect, but normal grooming, normal behavior, cooperative attitude, unimpaired thought processes, normal thought content, and normal insight. (Id. at 272). Dr. Keckler ultimately recommended that Plaintiff was not fit for military service because of his severe Major Depressive Disorder. (Id. at 273). In March 2015, the VA conducted a C&P examination noting Plaintiff's depressed mood, panic attacks more than once a

week, chronic sleep impairment, and mild memory loss, as well as occupational and social impairment due to *mild* or *transient* symptoms which decreased work efficiency and ability to perform occupational tasks *only* during periods of significant stress. (Id. at 306, 312, 446, 448). The VA ultimately awarded Plaintiff a disability rating of 50% for Major Depressive Disorder with Borderline Personality Disorder.

Plaintiff also points to a Mental RFC form completed by Dr. Cranton on September 19, 2016, opining that Plaintiff would be expected to have "repeated" episodes of decompensation in a work setting, "frequent" deficiencies in concentration, persistence or pace, and a "marked" limitation in his ability to respond appropriately to supervision, which could be expected to last twelve months or longer. (Id. at 605-06). However, as the ALJ found, the record shows that Dr. Cranton's opinions are excessive and inconsistent with his own examination findings (even those recorded immediately preceding the RFC form), in which he noted attentive, intact memory, cooperative, focused, coherent, no depression or anxiety, intact focus and attention, good eye contact, stable, therapy helping, expressing positive attitudes, and activities and abilities including attending church, spending time with his family during the holidays, and taking a real estate course, as discussed above. (Id. at 30-31, 500, 504, 507, 510, 513, 521, 591, 595, 715, 747). Dr. Cranton's opinions are also inconsistent with the largely

15

normal examination findings of Drs. Davis and Talerico, discussed above. Accordingly, the ALJ had good cause to discredit those opinions.[6]

Viewing the record in its entirety, the undersigned is satisfied that the ALJ's finding that Plaintiff has only *moderate* limitations in the paragraph B criteria, *i.e.,* understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself is supported by the substantial evidence detailed above. (Doc. 8 at 23-24). Without question, Plaintiff has pointed to evidence showing a diagnosis of Major Depressive Disorder and Borderline Personality Disorder with transient symptoms including anxious and unhappy mood, sad affect, mild memory loss, panic attacks, and mild occupational and social impairment. He has not, however, proffered credible evidence demonstrating extreme or marked limitations in the required areas. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08.

The law is clear that it is not sufficient to establish some of the criteria of the Listing. Plaintiff must establish *all* of the criteria. See Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some

---

[6] This evidence is addressed separately in Issue II, *infra*.

16

of those criteria, no matter how severely, does not qualify."). This Plaintiff has failed to do. Accordingly, Plaintiff's claim that his impairments meet or equal Listings 12.04 or 12.08 is without merit.

> **B. Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating psychiatrist, Dr. Cranton.**

In his brief, Plaintiff argues that the ALJ erred in failing to assign adequate weight to the opinions of his treating psychiatrist, Dr. John Cranton, contained in a Mental RFC questionnaire form dated September 19, 2016. (Doc. 9 at 7; Doc. 8 at 605). The Government counters that the ALJ properly considered Dr. Cranton's opinions and had good cause to discredit them because they were inconsistent with the objective medical evidence, as well as the other medical opinions in the record. (Doc. 13 at 9). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

17

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357

18

F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

The evidence related to Dr. Cranton's treatment of Plaintiff, including Dr. Cranton's examination findings and opinions contained in the Mental RFC questionnaire form, have been discussed at length and will not be repeated here. The ALJ accorded little or partial weight to most of Dr. Cranton's opinions contained in the Mental RFC form because they were inconsistent with his own examination findings, as well as the remaining substantial medical evidence in the record and the opinions of consultative examiners, Drs. Davis and Talerico.[7] (Doc. 8 at 23, 28-30). Having thoroughly reviewed

---

[7] The ALJ did assign great weight to Dr. Cranton's opinion that Plaintiff needed to fill the void created by not working by getting out and helping people, such as volunteering with the wounded warriors program. (Doc. 8 at 30). The ALJ found this opinion to be consistent with the record as a whole. (Id.). The ALJ also noted that Dr. Cranton failed to apply the new paragraph B criteria. Regardless of the effect the new paragraph B criteria may or may not have had on Dr. Cranton's opinions, the Court finds that the inconsistency between the majority of Dr. Cranton's opinions and

19

the record in this case, the Court is satisfied, for the reasons discussed above, that the weight assigned to the opinions of Plaintiff's treating psychiatrist, Dr. Cranton, by the ALJ is supported by substantial evidence. Thus, Plaintiff's claim must fail.

**VII.** <u>**Conclusion**</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **27th** day of **February, 2019.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

---

the medical evidence of record is sufficient cause for the ALJ to discredit those opinions.